# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION

A̲M̲O̲S̲ W̲A̲R̲R̲E̲N̲ L̲A̲M̲B̲                                                                        P̲L̲A̲I̲N̲T̲I̲F̲F̲

v.                                                                                        N̲O̲. 5:22-C̲V̲-90-BJB

A̲N̲D̲Y̲ C̲O̲O̲P̲E̲R̲, E̲T̲ A̲L̲.                                                                      D̲E̲F̲E̲N̲D̲A̲N̲T̲S̲

\* \* \* \* \*

## M̲E̲M̲O̲R̲A̲N̲D̲U̲M̲ O̲P̲I̲N̲I̲O̲N̲ & O̲R̲D̲E̲R̲

Amos Lamb filed this suit against Andy Cooper of the Murray Police Department, Mike Hopkins of the Calloway County jail, and Ken Claud, also a Calloway County jail employee.[1] The Complaint (DN 1) alleges violations of Lamb's rights under the Fourth, Sixth, Eighth, Thirteenth, and Fourteenth Amendments of the U.S. Constitution. *Id.* The Court grants the Defendants' motion to dismiss this suit (DN 10) because Lamb's allegations, even if proved true, would not render the Defendants liable for the harms he complains about.

## A̲L̲L̲E̲G̲A̲T̲I̲O̲N̲S̲

Lamb alleges that on or around November 7, 2017, Andy Cooper "[c]harged … & testified before the grand jury that [Lamb] had committed a felony of buying a license plate out of state when [he] was a resident of Kentucky, without any probable cause to do so." Complaint at 2. The indictment, which Lamb included in his complaint, indicates that Lamb was charged for lacking license plates, failing to maintain insurance, displaying illegible license plates, and registering a motor vehicle in another state with the intent to avoid a usage tax or registration fee. Indictment (DN 1-2). Lamb failed to appear in court on December 5, 2017, and a warrant issued for his arrest. *Id.*; Criminal File (DN 10-1) at 38.

Nearly four years later, on July 26, 2021, Lamb was arrested for failing to appear and booked in Calloway County Jail. Criminal File at 39. Lamb alleges that he was not aware of the original charge until this arrest. Complaint at 2. He posted bail on August 4, 2021, and the Calloway Circuit Court dismissed all charges without prejudice on August 17. Criminal File at 10.

---

[1] The Complaint named "Tim Clard" as a defendant, but all parties appear to agree that this refers to Ken Claud, which this opinion uses. *See* Motion to Dismiss (DN 10) at 1; Response to Motion to Dismiss (DN 11) at 2.

1

During his time in pretrial detention, Lamb contends that Mike Hopkins, a Calloway jail employee, refused to allow him to file a petition for a writ of habeas corpus. Complaint at 2–3. He states that he gave his petition "[o]n or about" July 27 to another jail employee, "Deputy Billy Ray." *Id.* Ray allegedly returned the habeas petition to Lamb, stating that Hopkins "said [he] could wait to [his] first court appearance to file it." *Id.* "Hopkins," he relayed, "would not allow it to be filed." *Id.* Lamb alleges that he then filed a grievance on July 28, to which Hopkins responded on July 30. *Id.* Hopkins stated that he had not refused Lamb's habeas petition, though Lamb would "have to request legal mail to have it mailed to the court." *Id.* at 3.

Lamb doesn't allege any specific conduct by defendant Ken Claud, the Calloway County Jailer. *Id.* He does allege, however, that while incarcerated he was "put in a cell without enough clothes to stay warm." *Id.*

Lamb seeks punitive and compensatory damages for this alleged conduct by the defendants. He claims that each of them, acting in their individual and official capacities, violated his constitutional rights secured by the Fourth, Sixth, Eighth, Thirteenth, and Fourteenth Amendments.

## THIS LITIGATION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although courts must accept factual allegations as true, courts need not accept "legal conclusions" and conclusory statements without factual evidence. *Id.* A claim's legal requirements provide an important framework for a complaint, but a "formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 570. A claim is plausible only if the complaint contains factual allegations supporting each of its "material elements." *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 992 (6th Cir. 2009).

The Court construes the Complaint in the light most favorable to Lamb and accepts all well-pleaded factual allegations as true. *Lambert v. Hartman,* 517 F.3d 433, 439 (6th Cir. 2008). Because Lamb proceeds pro se, his Complaint must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).

Though not expressly cited, the Court construes Lamb's damages claims for federal constitutional violations to arise under 42 U.S.C. § 1983, which states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia,

2

subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....

### I. Official-Capacity Claims

Official-capacity suits are treated as suits against the government who employs the individual defendant—in this case, Calloway County and Murray, Kentucky. *See Brandon v. Holt*, 469 U.S. 464, 472 (1985). So the federal claims against these three employees, acting in their official capacity, can be addressed together.

"Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Because of this, municipalities cannot be held vicariously liable; their policies or customs must have caused the alleged constitutional violation. *Id.* "There are four methods of proving a municipality's illegal policy or custom," but Lamb hasn't alleged any facts (or made any arguments in his response) that would support such a conclusion. *Wright v. City of Euclid*, 962 F.3d 852, 880 (6th Cir. 2020) (quotation omitted). So the Court dismisses all the official capacity claims.

### II. Individual-Capacity Claims

An individual-capacity suit under § 1983 requires a showing "that the official, acting under color of state law, caused the deprivation of a federal right." *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1989).

#### A. Malicious Prosecution

Lamb's claim against Cooper is best construed as a Fourth Amendment claim for malicious prosecution. That requires a plaintiff prove that (1) the defendant was involved in the decision to prosecute, (2) the prosecution lacked probable cause, (3) the plaintiff was deprived of their liberty due to the proceedings, and (4) "the criminal proceedings were resolved in the plaintiff's favor." *See Hartman v. Thompson*, 931 F.3d 471, 485 (6th Cir. 2019) (citing *Sykes v. Anderson*, 6225 F.3d 294, 308–09 (6th Cir. 2010)).

The Complaint alleges that Cooper—"without any probable cause to do so"—testified before a grand jury that Lamb committed a felony. Complaint at 2 (whether the allegation refers to probable cause to arrest, prosecute, or testify isn't clear). That grand jury returned an indictment, and Lamb was later arrested for failure to appear. *See id.*; Response at 1. The state court later dismissed the indictment because, according to the Complaint, the government lacked "enough evidence to prove guilt

beyond a reasonable doubt." Complaint at 2. Lamb says nothing about the evidence that didn't materialize, who determined the evidence was lacking, or Cooper's role in the indictment or dismissal. The Complaint makes no other allegations that Cooper was involved in the prosecutorial decisionmaking process—the first prong of the test. And the second prong of this conjunctive standard also remains unmet. A lack of "evidence to prove guilt beyond a reasonable doubt" before trial does not indicate that that there was no probable cause at the grand jury stage. *Florida v. Harris*, 568 U.S. 237, 243–44 (2013) ("Finely tuned standards such as proof beyond a reasonable doubt … have no place in the probable-cause decision.") (cleaned up).

Even if Lamb adequately alleged the necessary factors, § 1983 relief isn't available for another reason. The Supreme Court has squarely held that "witnesses are absolutely immune from damages liability based on their testimony, and [has] rejected the … contention that government officials who testify about the performance of their official duties may be held liable under § 1983 even if other witnesses may not." *Briscoe v. LaHue*, 460 U.S. 325, 326 (1983). Cooper is protected by absolute immunity based on his role in the judicial process. *Id.* This is true even if he knowingly provided false testimony. *Id.* at 345–46. So Lamb's claim against Cooper must be dismissed.

### B. Access to Courts

Lamb must plead an actual injury to state a claim for interference with access to the courts. That is, he must plead that the official interference hindered his efforts to pursue a nonfrivolous legal claim. *Lewis v. Casey*, 518 U.S. 343, 351–53 (1996). Interference with a habeas petition may interfere with access to the courts. *Id.* at 354. But delays of up to 16 days, the Supreme Court has noted, "are not of constitutional significance" "so long as they are the product of prison regulations reasonably related to legitimate penological interests." *Id.* at 362.

Lamb claims that Hopkins denied his access to the courts for nine days while he wished to file a habeas petition. Response at 2. During this period, "deputy Billy Ray" reported that Hopkins declined to facilitate Lamb's legal filings until his first court appearance. *Id.* Hopkins did, however, respond two days later to Lamb's grievance by explaining how Lamb could file a petition: by requesting "legal mail" and using it to mail the petition to the court. *See* Complaint at 2–3 &s Exh. A (DN 1-2) at 9.

Lamb allegedly spent ten days in jail before the prosecutor dropped his charges. *Id.* The Complaint and Lamb's response provide no explanation or reason to infer that his habeas petition, had Hopkins filed it sooner, would have resulted in an earlier release. So Lamb has not alleged an "actual injury" that resulted from any interference with his habeas petition. *See Lewis*, 518 U.S. at 351 (shortcomings in a

4

prison's legal assistance create an injury only if they "hindered his efforts to pursue a legal claim").

Even if a jail-caused delay harmed Lamb within the meaning of the Constitution, wouldn't that injury relate to a legitimate penological interest? The Complaint itself explains that Hopkins based the delay on Lamb's failure to follow procedure: the request for a legal filing "was not refused," but Lamb "ha[d] to request legal mail to have it mailed to the court." Complaint at 3. Read another way, Hopkins facilitated rather than interfered with Lamb's access to the courts. Even construing the allegations in Lamb's favor, however a prison's decision to follow a process for legal mail falls within a penological interest. *See, e.g.*, *Lewis*, 518 U.S. at 362 (prisoner didn't unconstitutionally lack access to courts based on inability to file a claim during a 16-day lockdown because the lockdown was "reasonably related to legitimate penological interests"); *Reynolds v. Wagner*, 128 F.3d 166, 175, 183 (3d Cir. 1997) (opinion of Alito, J.) (regulations affecting legal mail—but not preventing filing—did not interfere with access to courts).

### C. Cruel and Unusual Punishment

Lamb sues Claud for cruel and unusual punishment in violation of the Eighth Amendment because he was in jail without enough clothes to keep warm. There are two elements to an Eighth Amendment conditions-of-confinement claim. "First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Spencer v. Bouchard*, 449 F.3d 721, 728 (6th Cir. 2006) *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007) (cleaned up). "Second, the prison official's state of mind must be one of deliberate indifference to inmate health or safety." *Id.* (cleaned up).

Lamb doesn't allege that Claud caused this situation in any way, that Claud had any knowledge of the circumstances, or any other facts that give rise to an Eighth Amendment claim for cruel and unusual punishment. When the defendants pointed this out, Lamb said nothing in his response—effectively abandoning this claim. With no alleged facts to support an Eighth Amendment violation, even construing the pleadings in Lamb's favor, this claim must be dismissed.[2]

---

[2] Lamb makes no factual allegations whatsoever that might support a Sixth or Thirteenth Amendment violation, even though his refers to those provisions in the complaint. So those claims are dismissed under FED. R. CIV. P. 12(b)(6). *See Iqbal*, 556 U.S. at 678.

## ORDER

The Court grants the Defendants' motion to dismiss (DN 10) because Lamb fails to state a claim and denies as moot Lamb's motion for a status conference (DN 13).

Benjamin Beaton, District Judge
United States District Court

September 28, 2023